205 U.S. 46 (1907)
CITIZENS' SAVINGS AND TRUST COMPANY,
v.
ILLINOIS CENTRAL RAILROAD COMPANY.
No. 238.
Supreme Court of United States.
Submitted January 7, 1907.
Decided March 4, 1907.
APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ILLINOIS.
*50 Mr. Edward C. Eliot and Mr. William B. Sanders, for appellant.
Mr. J.M. Dickinson and Mr. Blewett Lee, for appellees.
*53 MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.
This case is here upon a certificate as to the jurisdiction of the Circuit Court.
The Eastern District of Illinois was created by the act of Congress approved March 3d, 1905, c. 1427. 33 Stat. 992, 995. The present suit in equity was, as we have stated, instituted in the Circuit Court for that District, but its jurisdiction was denied by the judgment below upon the ground solely that each defendant railroad corporation was shown to be an inhabitant of the Northern District of Illinois, not of the Eastern District, and, therefore, this suit was not local to the latter District.
By the eighth section of the act of March 3d, 1875, determining the jurisdiction of the Circuit Courts of the United States, it was provided: "That when in any suit, commenced in any circuit court of the United States, to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur, by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks; and in case such absent defendant shall not appear, plead, answer, or demur within the time so limited, or within some further time, to be allowed by the court, in its discretion, *54 and upon proof of the service or publication of said order, and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district," etc. 18 Stat. 470, 472, c. 137.
These provisions were substantially those embodied in § 738 of the Revised Statutes, except that the act of 1875 embraced (as § 738 did not) suits in equity "to remove any encumbrance or lien or cloud upon the title to real or personal property." Both Section 738 and the act of 1875 related to legal and equitable liens or claims on real and personal property within the district where the suit was brought.
The repealing clause of the Judiciary Act of 1887-1888 did not reach the 8th section of the act of 1875. That section is still in force, as was expressly held in Jellenik v. Huron Copper Mining Co., 177 U.S. 1, 10.
We are then to inquire as to the scope of the eighth section of the above act of 1875. And that inquiry involves the question whether this suit is one "to enforce any legal or equitable lien upon, or claim to, or to remove any encumbrance or lien or cloud upon the title, to real or personal property" within the Eastern District of Illinois where the suit was brought.
In Mellen v. Moline Malleable Iron Works, 131 U.S. 352, we had occasion to examine the provisions of the act of 1875. A question there arose as to the jurisdiction of a Circuit Court of the United States to render a decree annulling a trust deed and chattel mortgage covering property within the district where the suit was brought, in which suit the defendants did not appear, but were proceeded against in the mode authorized by the above act of 1875. This court said: "The *55 previous statute gave the above remedy only in suits `to enforce any legal or equitable lien or claim against real or personal property within the district where the suit is brought,' while the act of 1875 gives it also in suits brought `to remove any incumbrance or lien or cloud upon the title to' such property. Rev. Stat. § 738; 18 Stat. 472, c. 137, § 8. We are of opinion that the suit instituted by the Furnace Company against the Iron Works and others belonged to the class of suits last described. The trust deed and chattel mortgage in question embraced specific property within the district in which the suit was brought. The Furnace Company, in behalf of itself and other creditors of the Iron Works, claimed an interest in such property as constituting a trust fund for the payment of the debts of the latter, and the right to have it subjected to the payment of their demands. In Graham v. Railroad Company, 102 U.S. 148, 161, this court said that `when a corporation became insolvent, it is so far civilly dead, that its property may be administered as a trust fund for the benefit of the stockholders and creditors. A court of equity, at the instance of the proper parties, will then make those funds trust funds, which, in other circumstances, are as much the absolute property of the corporation as any man's property is his.' See also Mumma v. Potomac Company, 8 Pet. 281, 286; County of Morgan v. Allen, 103 U.S. 498, 509; Wabash &c. Railway v. Ham, 114 U.S. 587, 594; 2 Story's Eq. Jur. § 1252; 1 Perry on Trusts, § 242. The trust deed and chattel mortgage executed by the Iron Works created a lien upon the property, in favor of Wheeler, Carson, Hill, and the Keator Lumber Company, superior to all other creditors. The Furnace Company, in behalf of itself and other unsecured creditors, as well as Wheelock, denied the validity of Hill's lien as against them. That lien was therefore an incumbrance or cloud upon the title, to their prejudice. Until such lien or incumbrance was removed, they could not know the extent of their interest in the property or in the proceeds of its sale. The case made by the original, as well *56 as cross-suit, seems to be within both the letter and the spirit of the act of 1875."
A recent case is that of Jellinik v. Huron Copper Mining Co., supra. That was a suit by stockholders of a Michigan corporation. Its object, as the bill disclosed, was to remove the cloud that had come upon their title to the shares of stock held by them. The issues in the case made it necessary to determine the scope of the above act of 1875, c. 137. This court said: "Prior to the passage of the above act of March 3, 1875, the authority of a Circuit Court of the United States to make an order directing a defendant  who was not an inhabitant of nor found within the district and who did not voluntarily appear  to appear, plead, answer or demur, was restricted to suits in equity brought to enforce legal or equitable liens or claims against real or personal property within the district. Rev. Stat. § 738. But that act extended the authority of the court to a suit brought `to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought.' One of the objects of the present suit was to remove an incumbrance or cloud upon the title to certain shares of the stock of a Michigan corporation. No question is made as to the jurisdiction of the court so far as it rests upon the diverse citizenship of the parties. The plaintiffs alleged that they were the equitable owners of that stock, although the legal title was in certain of the defendants. The relief asked was a decree establishing their rightful title and ownership; and in order that such a decree might be obtained the defendants referred to were ordered to appear, plead, answer or demur; but as they refused to do so, the Circuit Court decided that it could not proceed further. That court was of opinion that `the shares of stock in question are not personal property within the district within the purview of the statute of the United States authorizing the bringing in by publication of notice to non-resident defendants who assert some right or claim to the property which is the subject of suit.' 82 Fed. *57 Rep. 778, 779. The proper forum, the court said, for the litigation of the question involved would be in the State of which the defendants were citizens. The question to be determined on this appeal is, whether the stock in question is personal property within the district in which the suit was brought. If it is, then the case is embraced by the act of 1875, c. 137, and the Circuit Court erred in dismissing the bill." Again: "It is sufficient for this case to say that the State under whose laws the Company came into existence has declared, as it lawfully might, that such stock is to be deemed personal property. That is a rule which the Circuit Court of the United States sitting in Michigan should enforce as part of the law of the State in respect of corporations created by it. The stock held by the defendants residing outside of Michigan who refused to submit themselves to the jurisdiction of the Circuit Court being regarded as personal property, the act of 1875 must be held to embrace the present case, if the stock in question is `within the district' in which the suit was brought. Whether the stock is in Michigan, so as to authorize that State to subject it to taxation as against individual shareholders domiciled in another State, is a question not presented in this case, and we express no opinion upon it. But we are of opinion that it is within Michigan for the purposes of a suit brought there against the Company  such shareholders being made parties to the suit  to determine whether the stock is rightfully held by them. The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the Company for the benefit of the true owner. As the habitation or domicil of the Company is and must be in the State that created it, the property represented by its certificates of stock may be deemed to be held by the Company within the State whose creature it is, whenever it is sought by suit to determine who is its real owner. This principle is not affected by the fact that the defendant is authorized by the laws of Michigan to have an office in another State, at which a book showing the transfers *58 of stock may be kept." See, also, Dick v. Foraker, 155 U.S. 404.
These decisions, we think, make it clear that this suit comes within the act of 1875, as one to remove an incumbrance or cloud upon the title to real property within the Eastern District of Illinois. The railroad in question is wholly within that district, although the defendant corporations, including the Belleville Company, may hold their annual or other meetings in Chicago. The bill seeks the cancellation of the deeds and leases under and by authority of which the properties of the Belleville Company are held and managed in the interest, as is alleged, of the Illinois Central Railroad Company, and to the destruction of the rights of the stockholders of the Belleville Company. The bill also, as we have seen, prays for the appointment of a receiver of the Belleville Company and the surrender and delivery to such receiver of all its corporate assets, books, papers and everything that rightfully belongs to it, and account to such receiver, as prayed; also, that the Illinois Central Railroad Company be restrained from interfering in any way with the receiver, or with the operation of the Belleville railroad as an independent, separate company. In addition, there is a prayer in the bill for general relief. If the deeds and leases in question are adjudged to be void, the entire situation, as to the possession and control of the Belleville railroad properties, will be changed, and the alleged incumbrances upon the properties of the Belleville Company will be removed. We express no opinion upon the question whether, upon its own showing, or in the event the allegations of the bill are sustained by proof, the plaintiff is entitled to a decree giving the relief asked by it. There was no demurrer to the bill as being insufficient in equity. The only inquiry now is whether, looking at the allegations of the bill, the suit is of such a nature as to bring it within the act of 1875, as one to remove incumbrances or clouds upon real or personal property within the district where the suit was brought, and, therefore, one local to such district. The court below held *59 that the suit was not one which could be brought and maintained against the defendant corporations found to be inhabitants of another district and not voluntarily appearing in the suit; and this, notwithstanding the railroad in question is wholly within the district where the suit was brought. 18 Stat. 472; 25 Stat. 436. If the suit was within the terms of the act of 1875, then the Circuit Court of the Eastern District of Illinois, although the defendant corporations may be inhabitants of another district in Illinois, could proceed to such an adjudication as the facts would justify, subject, of course, to the condition prescribed by the eighth section of that act, that any adjudication, affecting absent defendants without appearance, should affect only such property, within the district as may be the subject of the suit and under the jurisdiction of the court.
The plaintiff contends that this condition was waived, and the general appearance of the defendants entered, when their counsel, at the hearing as to the sufficiency of the pleas to the jurisdiction, argued the merits of the case as disclosed by the bill. This is too harsh an interpretation of what occurred in the court below. There was no motion for the dismissal of the bill for want of equity. The discussion of the merits was permitted or invited by the court in order that it might be informed on that question in the event it concluded to consider the merits along with the question of the sufficiency of the pleas to the jurisdiction. We are satisfied that the defendants did not intend to waive the benefit of their qualified appearance at the time of filing the pleas to the jurisdiction.
We adjudge that the suit is of such a nature as to bring it within the jurisdiction of the Circuit Court for the Eastern District, under the act of 1875. The judgment must, therefore, be reversed and the cause remanded that the plaintiff may proceed, as it may be advised, with the preparation of its case under the act of 1875.
It is so ordered.