**Mary C. VICENTI, et al., Individually and on behalf of All Others Similarly Situated, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 72–1388.

United States Court of Appeals, Tenth Circuit.

Dec. 18, 1972.

---

Richard B. Collins, Jr., Window Rock, Ariz. (Donald Juneau, Window Rock, Ariz. and Paul L. Biderman, Crownpoint, N. M., on the brief), for appellants.

Henry J. Bourguignon, U. S. Department of Justice, Washington, D. C. (Victor R. Ortega, U. S. Atty., Ruth C. Streeter, Asst. U. S. Atty., Kent Frizzell, Asst. Atty. Gen., Albuquerque, N. M., Jacques B. Gellin, U. S. Department of Justice, Washington, D. C., on the brief), for appellee.

Before HILL, HOLLOWAY and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

The appellants, all Indians and members of the Navajo Tribe, brought this action pursuant to 25 U.S.C.A. §§ 345[1] and 346[2] to recover title to and possession of certain allotments of land claimed by them and for damages for

---

1. § 345 provides that:

All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, but this provision shall not apply to any lands held August 15, 1894, by either of the Five Civilized Tribes, nor to any of the lands within the Quapaw Indian Agency: *Provided*, That the right of appeal shall be allowed to either party as in other cases.

2. § 346 provides that:

The plaintiff shall cause a copy of his petition filed under section 345 of this title, to be served upon the United States attorney in the district wherein suit is brought, and shall mail a copy of same, by registered letter, to the Attorney General of the United States, and shall thereupon cause to be filed with the clerk of the court wherein suit is instituted an affidavit of such service and the mailing of such letter. It shall be the duty of the United States attorney upon whom service of petition is made as aforesaid to appear and defend the interests of the Government in the suit, and within sixty days after the service of petition upon him, unless the time should be extended by order of the court made in the case to file a plea, answer, or demurrer on the part of the Government, and to file a notice of any counterclaim, set-off, claim for damages, or other demand or defense whatsoever of the Government in the premises: *Provided*, That should the United States attorney neglect or refuse to file the plea, answer, demurrer, or defense, as required, the plaintiff may proceed with the case under such rules as the court may adopt in the premises; but the plaintiff shall not have judgment or decree for his claim, or any part thereof, unless he shall establish the same by proof satisfactory to the court.

loss of use, loss of income, and loss of improvements on the land. The appellees included the private parties in possession of the land, the United States of America, and all other persons unknown claiming any right, title, or easement in the property affected by the action.

The appellants reside on the Navajo Reservation in New Mexico. Their land is interspersed with sections of lands not owned by the Tribe. Prior to 1945 the appellants or their ancestors were granted allotments on the lands which they occupied and used for grazing purposes. They made improvements for housing and stock.

In 1946 a non-Indian rancher erected fences around some of these allotments, interfering with the Indians' use of them. In 1949, to allow the rancher to consolidate his operation, the Bureau of Indian Affairs prevailed upon the appellants, or their predecessors, to surrender their allotments in exchange for lieu lands. Thereafter the appellants or their predecessors were moved from their allotments into other areas. The majority of them did not receive lieu lands. This suit was commenced in July of 1970.

By stipulation and order entered January 17, 1972, the day before trial, the private parties occupying the allotment lands which had been surrendered by the appellants in anticipation of receipt of lieu lands renounced all right, title, and interest in the lands in favor of the appellants, and the appellants relinquished all claims for damages and profits against those defendants. The United States remained as the sole defendant.

Trial was had before the Court. Judgment was entered: (1) vesting exclusive title in the allotments in the appellants; (2) affording the appellants immediate and exclusive use and enjoyment of the allotments; (3) declaring all prior relinquishments to the allotments executed by the appellants or their predecessors null and void; (4) denying money damages against the United States; and (5) directing each party to bear its own costs.

In its memorandum opinion the District Court noted that this suit was not a proper class action and that the statute of limitations had run on any claim that the appellants may have had under the Federal Tort Claim Act or the Tucker Act. The Court stated that whereas there was jurisdiction of the United States under 25 U.S.C.A. §§ 345 and 346 to clear any cloud on the title of the allotted lands, neither § 345 nor § 346 afforded jurisdiction for the recovery of damages by the appellants from the United States, in light of the fact that the United States had received no money from the allotment lands which it held in trust during the period of its use and occupancy by the private parties. The Court noted particularly that it was "regrettable" that there was no damage claim available to the appellants because either the Bureau of Indian Affairs, the Bureau of Land Management, or the Department of the Interior had allowed a "cruel hoax" to be perpetrated against them.

The appellants appeal from the trial court's: (1) denial of money damages against the United States; (2) ruling that the action was not a proper class action; and (3) ruling that the statute of limitations had run on any claims that the appellants might have.

The appellants contend that the waiver of sovereign immunity by the United States in 25 U.S.C.A. §§ 345 and 346 affords jurisdiction to recover money damages from the United States, in that damages are ancillary to the recovery of possession and/or beneficial ownership of an allotment. The appellants contend that the jurisdictional language of § 345 is quite broad, and that district courts have jurisdiction over all aspects of a proper allotment ownership claim. The appellants also argue that the utilization of the word "set-off" in § 346 conclusively shows that damages can be recovered from the United States in a §§ 345–346 suit.

The appellants rely heavily on United States v. Pierce, 235 F.2d 885 (9th Cir. 1956), for the proposition that money

damages are recoverable from the United States under § 345. In *Pierce* the court held that rental income derived from allotted lands and *collected* by the United States acting in trust for the benefit of the *cestui que trust* was recoverable. There was no rental income generated or collected in the case at bar. Therefore *Pierce* does not control.

In Harkins v. United States, 375 F.2d 239 (10th Cir. 1967), we held contra to *Pierce, supra.* That case was a suit brought by Indian allottees against the United States for damages, alleging that government agents charged with the trust management of the income realized from private leases of the subject allotment lands had improperly paid certain taxes out of Indian trust funds. There Judge Hill noted:

"While we recognize that Congressional 'authorization to bring an action involving restricted lands "confers by implication permission to sue the United States,"' we hold that this statute does not waive the immunity of the United States government to this suit. 25 U.S.C. § 345 'permits action to be brought by persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land and the action is one to determine the right of such person of Indian blood to an allotment of land under any law or treaty.' For this limited purpose, the United States has consented to suit. There is no question here concerning the allotment of land. At issue is the manner in which government agents have dealt with income from the land. 'Section 345 gives no general consent of the United States to be sued even in connection with its administration of allotments * * *,' and that section gives no consent, express or implied, to this suit." 375 F.2d at 241.

The same restrictive interpretation was reiterated by this Court in Affiliated Ute Citizens of State of Utah v. United States, 431 F.2d 1349 (10th Cir.

1970). In affirming, the United States Supreme Court endorsed our construction of § 345. Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Therein, Justice Blackmun, writing the majority opinion, opined:

"*The United States, of course, may not be sued without its consent.* This long-established principle has been applied in actions for the possession or conveyance of real estate. It has been applied to Indian lands the title to which the United States holds in trust. It has been applied, specifically, in a suit by an Indian who has a beneficial interest in land. Naganab v. Hitchcock, 202 U.S. 473, [26 S.Ct. 667, 50 L.Ed. 1113] (1906). *Naganab*, therefore, controls the distribution aspect of the AUC case unless the United States has consented to be sued.

The consent, it is claimed, exists in 25 U.S.C. § 345. *This, however, is an allotment statute. Allotment is a term of art in Indian law.* U. S. Dept. of the Interior, Federal Indian Law 774 (1958). It means a selection of specific land awarded to an individual allottee from a common holding. *Section 345 authorizes, and provides governmental consent for, only actions for allotment.*" 406 U.S. at 141–142, 92 S.Ct. at 1466. (Citations omitted; emphasis ours).

It is clear that §§ 345 and 346 cannot be afforded the breadth contended by the appellants. The United States cannot be sued without its consent. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Sovereign immunity is always considered present, unless expressly waived. Waivers by implication will not be endorsed. Courts are not empowered to legislate so as to dictate jurisdiction. We shall not "fashion" or create private rights of action when, as here, Congress has revealed no intention to do so. Chavez v. Freshpict Foods, Inc., 456 F. 2d 890 (10th Cir. 1972).

We have considered the other allegations of error contended by the appellants, but need not reach them in view of the restrictive interpretation that must be afforded §§ 345 and 346.

Affirmed.

HOLLOWAY, Circuit Judge, concurring in the result:

I concur in the result reached by the majority opinion because I believe it is compelled by the language of our court in Harkins v. United States, 375 F.2d 239, 241.

I do not feel that Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741, is controlling nor that it leads to this result. As the Supreme Court there emphasized, that case involved only a mineral interest that had never been made the subject of an allotment. Furthermore the Court significantly observed: "Neither is it appurtenant to an allotment." Id. at 143, 92 S.Ct. at 1467. Here, however, the surcharge claim for the Government's breach of trust is appurtenant to an allotment. And, in my opinion, this surcharge claim is ancillary to the action to obtain a judgment for the land that had been made the subject of an allotment. For these reasons I cannot agree that the *Affiliated Ute Citizens* case applies here.

Nevertheless I conclude that our *Harkins* opinion compels an affirmance. There are differences between this case and *Harkins*, and *Harkins* does not deal with the forceful argument that the set-off provision in the companion statute—25 U.S.C.A. § 346—shows that Congress contemplated at least that some claims for damages may be entertained in suits under § 345 involving the right to any allotment; otherwise the reference to set-offs had no purpose at all in the statute. However, in *Harkins* our court described an action brought under § 345 as one ". . . to determine the right of such person of Indian blood to an allotment of land under any law or treaty." 375 F.2d at 241. And

the court concluded that "[f]or this limited purpose, the United States has consented to suit." Ibid. In view of this strict interpretation placed on the jurisdictional statute I feel we are obliged to affirm.